IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDOLPH M. WARGATS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-0318 |
| | ) | |
| v. | ) | |
| | ) | Judge McVerry |
| PITTSBURGH TECHNICAL INSTITUTE, | ) | Magistrate Judge Lenihan |
| | ) | |
| | ) | Re: Doc. No. 31 |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION

    It is recommended that Defendant's Motion for Summary Judgment be denied.

II.    REPORT

    A.    Facts

    Unless otherwise indicated, the following facts are undisputed:

    Defendant Pittsburgh Technical Institute ("PTI" or "Defendant"), is a co-educational, independent institution of higher education dedicated to providing practical and industry-focused career education in selected, skill-specific business, technical, design and medical fields. Its student body consists of high school graduates many of whom were in the bottom half of their high school classes and who often need a significant amount of encouragement, care and attention to maximize their opportunity for success at PTI and in life. PTI's operating Mission Statement provides: "Our greatest contribution to humankind is to make

sure that every staff and faculty member cares that every student every day learns and grows and feels like a real human being."[1]  In 2002, PTI received Middle States accreditation which recommends that instructors hired with an Associate's Degree must agree to attain a Bachelor's Degree as a condition of continued employment.  Plaintiff Randolph Wargats ("Wargats" or "Plaintiff") notes, however, that PTI was informed by the Middle States Commission that in the future, the accrediators would want most teachers to have a BA degree but that those currently working who did not have a degree were grandfathered.

Plaintiff was employed by Defendant from August 1998 until October 2004, as an electronics teacher.  Plaintiff was 56 years old when hired by PTI and was the oldest employee in PTI's electronics department at the time he was fired at the age of 62.  He has taught electronics courses for nearly 40 years and worked as an electronics instructor at the former Electronics Institute from 1966 through 1998.  Wargats received his diploma from the Electronics Institute; he did not have a college degree.  Plaintiff taught advanced courses since he began teaching at PTI.  He began teaching an advanced course – industrial electronics – and students in this class were in the 6th or 7th quarters of their eight quarter program at PTI.

Cynthia Reynolds ("Reynolds") has been president of PTI since September 2002.  She directly supervises Nancy Sheppard ("Sheppard"), PTI's director of Human Resources, and Greg DeFeo ("DeFeo") Defendant's Executive Vice President.  Reynolds indirectly supervises Eileen Riley ("Riley"), PTI's Vice President of Education since June 2004.  As Vice President of Education, Riley is responsible for PTI's 15 programs, the delivery of the education curriculum

---

[1] Although admitting that this is, in fact, PTI's Mission Statement, Plaintiff contends that the same is immaterial as Defendant's Senior Vice President of Academic Affairs conceded that PTI will contravene that "Mission Statement" whenever it suits its ends.

and teaching.  She supervises all PTI's department chairs, and in turn, the department chairs supervise the faculty, and then report to her.  The parties dispute whether Riley's decision to discharge a faculty member is controlling.

   Henry Yoder was chair or acting chair of the Electronics Department from February 2002 until January 2005.  Mark Scott is Senior Vice President for Academic Affairs.  According to Plaintiff, prior to June 2004, Scott was Vice President in charge of faculty, and therefore Yoder's direct supervisor, and Wargats' second level supervisor.  In July 2004, Scott moved from oversight of the education department to oversight of the financial aid area.

   According to Plaintiff, about a year after Reynolds became President of PTI, Reynolds ordered every employee who was 55 years of age or older to meet with her for what she called "an information session."[2]  During a series of individual meetings, Reynolds asked the employees about their plans for retirement.  Reynolds said she was asking those over 55 employees if they were planning to retire, but used the words "future plans."  First, Reynolds said she required each of her over-55 employees to attend these individual discussions because: "as a new president, [she] wanted to ensure succession" and that her friend suggested she "might think about talking to people who are getting – or thinking about leaving for whatever reason."  She said she ordered the meetings because "I myself was turning 55, and thought that things start changing and people start talking about it, so let's talk with individuals and see, so we can – we're a small company – we can be prepared for whatever changes people might make, or we

---

[2]Defendant contends that Reynolds did not "order" any employees to meet with her; rather her assistant, Patricia Johnson, sent a memo to these employees to advise them that Ms. Reynolds "would like to meet with each of" them.  The parties agree, however, that this memo was sent to employees 55 and older, in age descending order, from the oldest to the youngest.

might provide them with information that they might need."[3]  Reynolds did no succession planning after she talked with the over age 55 people.  Defendant adds, however, Reynolds did no additional succession planning because, with one exception, none of the employees with whom she met indicated a specific retirement date, and therefore, there was no need to do additional planning.

During her meeting with Wargats, around September 2003, Reynolds asked him about his plans for the future.  Wargats told Reynolds the earliest he could retire would be August 2004, but that he was not planning to retire then.  Following the meeting with Reynolds, Yoder questioned Wargats about his retirement plans.  First, sometime prior to February 2004, Yoder asked Wargats whether he planned to retire.  Wargats told Yoder that he could not retire until August 2004.  According to Plaintiff, he also told Yoder that he had no plans to retire in any event.  According to Yoder, he asked Plaintiff about his plans for retirement based on other faculty members discussing Plaintiff's possible retirement.  Yoder again questioned Plaintiff about retirement during Wargat's February 2004 evaluation meeting; Yoder's notes indicate that he asked Plaintiff if he was on target for an August 2004 retirement and that Plaintiff told Yoder that he could not retire until August 2004.  Plaintiff indicated to Yoder that when he does decide to retire, he would give Yoder six months' notice.  Yoder again raised the issue of Wargats' retirement during a May 11, 2004 performance evaluation.

The parties dispute whether Plaintiff was an effective teacher.

Yoder and Aris Tsouris, Electronics Department Team Leader, met with Plaintiff on August 13, 2004.  Yoder informed Plaintiff that the July 2004 quarter (which ended in

---

[3]Defendant again asserts that Reynolds never used the word "ordered."

4

October) would be his final quarter of teaching and that they needed to meet with Nancy Sheppard, PTI's Director of Human Resources. Yoder and Plaintiff met with Sheppard on August 13, 2004. Sheppard informed Plaintiff that his last day of employment would be October 14, 2004. She explained, as had others, that Plaintiff was not a good "fit" with PTI's students because he was teaching above the students. Plaintiff acknowledged that Sinopoli and Yoder had also told him "a few times" that he was not a good fit.

On August 25, 2004, Plaintiff filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") alleging that his discharge was age-motivated in violation of the Pennsylvania Human Relations Act ("PHRA") and the Age Discrimination in Employment Act ("ADEA"), and dual-filed the charge with the Equal Employment Opportunity Commission ("EEOC"). On March 9, 2005, Plaintiff filed a Complaint in the United States District Court for the Western District of Pennsylvania alleging that the discharge violated the ADEA. On October 31, 2005, Plaintiff amended this Complaint to add a claim that his discharge also violated the PHRA.

B.  <u>Legal Standard</u>

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof

at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by Matsushita Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986).

C. Analysis

1. ADEA and PHRA claims

Plaintiff avers that Defendant terminated his employment on the basis of his age in violation of the ADEA, and the PHRA. See Amended Complaint at Doc. No.16. When there is no direct evidence of discrimination, a plaintiff may use circumstantial evidence to establish discrimination using the three-prong burden shifting analysis originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[4] See also Fasold v. Justice, 409 F.3d 178, 183-84 (3d Cir. 2005).

---

[4] The United States Court of Appeals for the Third Circuit has stated "that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." Fasold, 409 F.3d at 184 n. 8 (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002)). Finding no such distinguishing language, the Third Circuit has interpreted the relevant provisions of the ADEA and the PHRA "as applying identically . . . and as being governed by the same set of decisional law." Id. (citing Fogleman, 283 F.3d at 567).

Pursuant to McDonnell Douglas, a plaintiff employee must first establish a prima facie case of discrimination. Fasold, 409 F.3d at 184. The parties here do not dispute that Plaintiff has established a prima facie case.

After Plaintiff has established his prima facie case, the burden of production (but not the burden of persuasion) shifts to Defendant employer to articulate some legitimate, nondiscriminatory reason for Plaintiff's termination. See Fasold, 409 F.3d at 184 (citing Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 n. 11 (3d Cir. 2004); Shellenberger v. Summit Bancorp. Inc., 318 F.3d 183, 187 (3d Cir. 2003)). If the Defendant employer is able to articulate one or more such reasons, the Plaintiff "employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by preponderance of the evidence that the employer's proffered reasons are false or pretextual." Id. (citing Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003)).

To survive a motion for summary judgment at step three of the burden shifting analysis, Plaintiff must present some evidence from which a reasonable jury could either: "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 523 (3d Cir. 1992)). In Fuentes, the United States Court of Appeals for the Third Circuit further explained the quantum of proof required at step three as follows:

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the

> non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder <u>could</u> rationally find them "unworthy of credence," and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

<u>Fuentes</u>, 32 F.3d at 765 (emphasis in original) (quoting <u>Ezold</u>, 983 F.2d at 531) (other internal quotations omitted).  That is, the plaintiff must show, not simply that the defendant's articulated business reason was wrong, "but that it was so plainly wrong that it cannot have been the employer's real reason."  <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1109 (3d Cir. 1997).  The plaintiff must "present evidence contradicting the <u>core facts</u> put forward by the employer as the legitimate business reason for its decision."  <u>Kautz</u>, 412 F.3d at 467 (emphasis added).  Evidence contradicting these core facts must be directed at the decision-maker's belief; plaintiff's own beliefs and personal judgments, without more, will not raise a genuine issue of material fact.  <u>Simpson v. Kay Jewelers, Inc.</u>, 142 F.3d 639, 647 (3d Cir. 1998) ("Simpson's view of her performance . . . is not relevant.").  It is important to note that in light of this standard for proving pretext at step three of the <u>McDonnel Douglas</u> paradigm, the United States Supreme Court has made clear that a plaintiff is not required to present affirmative evidence of discrimination in addition to proof of pretext.  See <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 147 (2000).  Instead, "[i]n appropriate circumstances, the trier of fact <u>can reasonably infer</u> from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."  <u>Id</u>. (emphasis added).[5]  The United States Court of Appeals for the

---

[5]In <u>Reeves</u> the United States Supreme Court granted certiorari to resolve a split in the circuits as to whether a plaintiff is required to produce affirmative evidence of discrimination in addition to proof of pretext.  530 U.S. at 140.

Third Circuit recently discussed the impact of <u>Reeves</u> on the <u>Fuentes</u> standard for proving pretext as follows:

> Although <u>Reeves</u> makes clear that we may not require affirmative evidence of discrimination in addition to proof of pretext, it does not change our standard for proving pretext which "places a difficult burden on the plaintiff."

<u>Kautz</u>, 412 F.3d at 467 (quoting <u>Fuentes</u>, 32 F.3d at 765).

  At the second step of the <u>McDonnel Douglas</u> paradigm, Defendant has met its burden of production by articulating legitimate business reasons for Plaintiff's termination. According to Defendant, Plaintiff was discharged because of unacceptable performance, including his complaints about the inadequacies of his students, teaching beyond the syllabus and at too high a level, failing to improve his teaching methodology, failing to teach all students and not just the "best and brightest," and numerous, negative ratings and comments by his students. (Memorandum in Support of Defendant's Motion for Summary Judgment, Doc. No. 33 at 11-14.)

  Plaintiff claims that "the record is replete with evidence of pretext, as well as evidence Wargat's age motivated Defendant." (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Doc. No. 34 at 3.) First, Plaintiff argues that Defendant's questioning of Wargat's plans for retirement is itself evidence of age discrimination, and when placed in conjunction with other evidence of record, precludes summary judgment.

  As to comments or questions regarding retirement, both parties have directed this Court to numerous cases arguably supporting their respective positions. Many courts have recognized that an employer may make reasonable inquiries into the retirement plans of its employees for purposes of succession planning or to address rumors concerning retirement for

purposes of staffing.  See, e.g., Wallace v. O.C. Tanner Recognition Co., 299 F.3d 96, 100-101 (1st Cir. 2002) (citing Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 13 (1st Cir. 1998); Glanzman v. Metropolitan Management Corp., 391 F.3d 506, 513 (3d Cir. 2004); Moore v. Eli Lilly & Co., 990 F.2d 812, 818 (5th Cir. 1993); Woythal v. Tex-Tenn Corp., 112 F.3d 243, 247 (6th Cir. 1997); Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir. 1992); Montgomery v. John Deere & Co., 169 F.3d 556, 560 (8th Cir. 1999); Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 497 (8th Cir. 1998); Kelly v. Drexel Univ., 907 F. Supp. 864, 877 (E.D. Pa. 1995).  Courts have also recognized, however, that some retirement inquiries are so unnecessary and unreasonable, that such inquiries may constitute evidence of age discrimination, especially when placed in the context of all facts and circumstances in a particular case.  Greenberg v. Union Camp Corp., 48 F.3d 22, 28-29 (1st Cir. 1995) (citing Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 562-63 (1st Cir. 1986)); Guthrie v. J.C. Penney Co., 803 F.2d 202, 208 (5th Cir. 1986); Pitasi v. Gartner Group, Inc., 184 F.3d 709, 715 (7th Cir. 1999) (quoting Kaniff v. Allstate Ins. Co., 121 F.3d 258, 263 (7th Cir. 1997)); Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 497 (8th Cir. 1998); Buckley v. Hospital Corp. of America, 758 F.2d 1525, 1528 (11th Cir. 1985).

    Here, Plaintiff has presented evidence from which a reasonable jury could believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of PTI's discharge of Plaintiff.  See Fuentes, 32 F.3d at 763.  Viewing the facts in the light most favorable to Plaintiff, genuine issues of material fact exist as to whether Defendant's repeated retirement inquiries were so unnecessary and unreasonable as to constitute evidence of age discrimination, especially when viewed in conjunction with other evidence of record.  Defendant first questioned Plaintiff about his plans for retirement when Reynolds discussed the

issue with him in September 2003. Wargats told Reynolds that he was eligible for retirement in August 2004, but that he did not intend to retire then. Next, sometime prior to February 2004, Yoder asked Wargats if he planned to retire. Wargats told Yoder that he could not retire until August 2004 and that he had no plans to retire. Thereafter, Yoder's notes reflect that he again asked Wargats about his plans for retirement during a February 2004 performance evaluation meeting. Again, Wargats indicated his intention not to retire at that time, and assured Yoder that when he did decide to retire, he would give Yoder six months notice. Yet, Yoder raised the issue again during Wargat's May 2004 performance evaluation. These four inquiries over the course of an eight month period, against the back drop of Wargat's repeated assertions that he had no plans to retire by August 2004 or any other date, raise an issue of material fact as to whether PTI's repeated retirement inquiries were unnecessary or unreasonable. See Calhoun, 798 F.2d at 561-62 (employer inquiries as to Plaintiff's retirement three times in seven months evidence of age discrimination).

      Next, Plaintiff argues that issues of material fact exist as to whether Defendant's asserted reasons for Plaintiff's discharge are pretextual because they are inconsistent, contradictory, and implausible such that a reasonable factfinder could rationally find them unworthy of belief. At this juncture, it is important to note that to avoid summary judgment, Plaintiff must "cast substantial doubt on a fair number" of Defendant's articulated reasons for Plaintiff's discharge; it is not necessary, however, for Plaintiff "to discredit the remainder." See Fuentes, 32 F.3d at 764 n.7. "[T]he factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough . . . that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those

remaining rationales in particular is available." Id.

First, Plaintiff directs this Court's attention to the fact that Defendant wanted to raise its academic standards, yet it fired Wargats for attempting to do the same. In its Reply Brief, PTI acknowledges that it made a decision to raise academic standards and reiterates the argument that it had counseled Plaintiff on the need to teach all students, and not just the "best and brightest." (Doc. No. 39 at 3 & n.3.) Plaintiff directs this Court to evidence in the record, however, that demonstrates Plaintiff possessed a sophisticated knowledge in his area of expertise, challenged his students to do well, and graded rigorously when student performance fell below his expectations. The Affidavit of Eileen Riley is particularly telling wherein she comments regarding the complexity of Wargats' presentations, the fact that Wargats was challenging his students, and that Wargats made himself available for tutoring.

Plaintiff argues that Wargats met Defendant's stated criteria for being a good teacher and fired him anyway. Plaintiff presents evidence that Wargats' grades were not markedly different than the grades of other teachers. Consequently, it would appear that this grade distribution would not support Defendant's contention that Plaintiff was only teaching the best students and leaving the remainder defeated and frustrated. Further, Plaintiff also presents evidence that Wargats offered review courses during his lunch hour and, as stated above, made himself available for tutoring. Moreover, PTI's own "Student Surveys of Instruction" reveal praise for Plaintiff's teaching accompanied by "Exceptional" ratings in numerous (and sometimes all) survey categories. In addition, Plaintiff presents evidence demonstrating that students who actually had Plaintiff as an instructor, including students who received low grades, expressed overwhelmingly positive comments concerning Plaintiff as an instructor. See

Plaintiff's Statement of Material Facts, Doc. No. 35 at ¶¶ 136-173.[6]  This evidence, in conjunction with Defendant's inquiries regarding Plaintiff's retirement, raise genuine issues of material fact upon which a jury could reasonably determine that PTI's justifications for terminating Plaintiff are implausible, inconsistent, and contradictory.

Finally, in its Reply Brief, Defendant argues that Plaintiff does not respond to case law requiring deference to educational decisions.  (Doc. No. 39 at 1.)  This Court is mindful of the right of educational institutions to establish its own criteria for the promotion and tenure of its instructors so long as their decisions are not based upon statutorily impermissible reasons.  See e.g., EEOC v. Franklin and Marshall College, 775 F.2d 110, 117 (3d Cir. 1985).  To this end, it is not for this Court to weigh the evidence and determine whether Wargats was, in fact, an acceptable instructor at PTI.  This Court's role is only to determine whether Plaintiff has offered evidence so as to demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered reasons for Plaintiff's discharge that a reasonable factfinder could disbelieve them, and infer that PTI did not act for its asserted reasons.  See Fuentes, 32 F.3d at 765.  As discussed above, Plaintiff has offered such evidence.

Consequently, Defendant's Motion for Summary Judgment should be denied.

III.   CONCLUSION

It is recommended that Defendant's Motion for Summary Judgment be denied.

In accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and

---

[6]Defendant states that it did not receive these particular documents until after Plaintiff's discharge.  These documents, however, simply corroborate the "Student Surveys of Instruction" already contained within PTI's files.

13

Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                                LISA PUPO LENIHAN
                                                                United States Magistrate Judge

Dated: December 4, 2006

cc: The Honorable Terrence F. McVerry
    United States District Court Judge


    All counsel of record